CHARLES B. MODESITT ET AL., APPELLEES, v. ST. JOSEPH &
GRAND ISLAND RAILWAY COMPANY, APPELLANT.

FILED OCTOBER 21, 1911.   No. 17,004.

1. **Appeal: ABSTRACT.** Under the statute of 1911 relating to abstracts
in this court (code, sec. 675f) and rules 16 and 20 (89 Neb. vii),
either party may abstract a cause docketed in this court on or
before April 7, 1911, and if such abstract "is incomplete or in-
accurate in any substantial part" the opposite party may file
a further abstract making necessary corrections or additions.
The abstract filed "will be taken to be accurate and sufficient for
a full understanding of the questions presented for decision,"
unless a further abstract is filed.

2. **Carriers: INJURY TO LIVE STOCK: EVIDENCE.** Evidence examined
and found to support the verdict.

APPEAL from the district court for Hall county:
JAMES R. HANNA, JUDGE. *Affirmed.*

*Robert A. Brown* and *James H. Wooley,* for appellant.

*Harrison & Prince, contra.*

SEDGWICK, J.

1. The appeal in this case was docketed in this court
before the 7th day of April, 1911. An abstract was made
and filed by appellant under rule 20 (89 Neb. vii). This
abstract is criticised by the appellee in the brief, but no
further abstract making corrections or additions has been
filed, as provided by rule 16, therefore the abstract as filed
"will be taken to be accurate and sufficient for a full
understanding of the questions presented for decision."

2. It appears from the abstract that plaintiffs alleged
in their petition that they delivered to the defendant rail-
road company at Grand Island, Nebraska, five car-loads
of sheep "to be shipped to St. Joseph for said Monday
morning market, and were to be stopped at the yards and
pastures owned, held, controlled or operated by defend-

ant on its line of road at Stouts, Kansas, 22 miles from
St. Joseph, until Sunday evening or night, September 5,
1909. The sheep were taken to Stouts, put in the pas-
tures, with the request and agreement that they be prop-
erly cared for until Sunday evening or night, September
5, 1909, and then shipped to St. Joseph and delivered to
plaintiffs Monday morning, September 6, 1909; that de-
fendant negligently loaded the sheep about noon Sunday,
September 5, deprived them of the rest and feed they
would have had, and they arrived at St. Joseph about 6
that evening, where they had to remain in the cars or
yards until Monday, September 6; that they were dam-
aged by shrinkage and lessened in value, $353.85." After-
wards the petition was amended, striking out the words
"evening or," leaving the allegation that they were to be
cared for by the defendant until Sunday night, and then
shipped to St. Joseph.

The answer admits that the sheep were shipped to
Stouts, Kansas, and "were to be and were unloaded in
pastures September 4, and alleges it understood plain-
tiffs desired the sheep reloaded for said Monday morning's
market; that it reloaded about 5 P. M. Sunday, September
5, and duly forwarded the sheep to St. Joseph on an extra
train, the only one available on said evening and night of
September 5, 1909;  *   *   *  that the plaintiff Dryer,
who accompanied the sheep to Stouts, informed the man
in charge of the Stouts yards that he would have the stock
commissionmen tell him when to send the sheep on to St.
Joseph; that on Sunday, September 5, 1909, said stock
commissionmen did duly, and in the usual manner, re-
quest the defendant to forward the sheep to St. Joseph
that day; that, in pursuance of said request, it reloaded
about 4 P. M. and forwarded the sheep to St. Joseph, de-
livered said cars to the St. Joseph Terminal Company
about 6:40 P. M., which delivered them to Union Stock
Yards Company about 8:10 Sunday, September 5, 1909,
as was customary; that it duly and timely performed
its entire contract in reference to said shipment; and

denies all negligence on its part." The reply alleged that "there was a regular train during the evening and night of September 5, 1909, later than the said extra, when the sheep should have been conveyed from Stouts to St. Joseph." It also contains a general denial.

The defendant complains of the ruling of the court in allowing the amendment to the petition, and in refusing a continuance made necessary, as it claims, by said amendment, and also complains of a similar ruling of the court upon the trial, and instructions given and refused. There is, however, nothing in the abstract to show that any exception was taken to the ruling of the court upon the amendment of the petition, and, while it appears that an affidavit was filed for a continuance, the abstract does not show the contents of the affidavit. No instructions are contained in the abstract, and none of these questions suggested by the defendant are presented in the abstract. The plaintiffs also assume that there is evidence that is not shown in the abstract, but, as before stated, no further abstract making corrections or additions has been filed by the plaintiffs, and it will not be presumed that the abstract which we have is "incomplete or inaccurate in any substantial part."

The question, then, presented upon this appeal is as to the sufficiency of the evidence to support the verdict. One of plaintiffs, who testifies that he has "handled sheep for 25 years," went with this shipment of sheep to Stouts, and they arrived there soon after daylight on Saturday morning, September 4, 1909. Stouts is about 230 miles from Grand Island and 22 miles from St. Joseph. The sheep were watered and put out in blue grass pastures, and the witness remained there until the afternoon or evening, and paid the defendant for "two days' feed," and then went to St. Joseph. It appears from the evidence that the defendant company maintained pastures at Stouts, a station some 22 miles from St. Joseph, for convenience of its shippers, and the custom is to unload stock at these pastures and allow them to feed and rest

before being shipped on to market in St. Joseph. These sheep arrived at Stouts soon after daylight on Saturday morning, and it was the desire and expectation of the plaintiffs that they be kept on feed in these pastures, and shipped so as to arrive at St. Joseph for the market on the following Monday morning. The sheep were unloaded and put in the pastures on Saturday morning, and on the following Sunday, soon after noon, the defendant began reloading them, and they were shipped from Stouts at, or perhaps a little before, 4 o'clock in the afternoon. It required from one to two hours to run from Stouts to St. Joseph, and the sheep arrived there early Sunday evening. The evidence is that on the next morning they were found to be in bad condition to go upon market, and that the shrinkage was greater than it would have been if they had been loaded and shipped during the night, so as to have arrived at St. Joseph early Monday morning. The regular local train from Stouts to St. Joseph did not run on Sunday. There was a regular through train (No. 26) which regularly left Stouts between 5 and 6 o'clock in the morning, and was due to arrive in St. Joseph at a little before 7. There were two extra trains on the Sunday afternoon in question, one leaving soon after noon and another about 4 o'clock in the afternoon. The sheep were shipped on this later train. The regular train (No. 26) left Stouts on Monday morning at about 5:15, and if the sheep had been loaded during the night and shipped on this train they would have arrived at St. Joseph in time for the Monday morning market, and in better condition, so that the damages complained of would have been avoided.

The question was whether the defendant was negligent in shipping as they did on the extra at 4 o'clock rather than on the regular train (No. 26). The evidence upon this point, as shown by the abstract, is somewhat conflicting. One of the plaintiffs testified that he informed the defendant's agent that the commissionmen at St. Joseph would notify them when to ship the stock, and there is

evidence to show that the commissionmen did notify the defendant during the forenoon of Sunday to ship the stock, and that, in pursuance of this order, the defendant did proceed at once to ship the sheep upon the last train that left during Sunday. It must, however, be remembered that the petition alleges that the sheep were originally shipped to be upon the Monday morning market at St. Joseph. This allegation is not denied in the answer. There is evidence that these pastures at Stouts were maintained by the defendant for the express purpose of putting such animals in condition before they are placed upon the market, and that to load these sheep between 12 o'clock noon and 4 o'clock in the afternoon of a warm day was contrary to the understanding of the parties when they were shipped. There is also evidence that train No. 26 is also a stock train, and on some occasions stops at Stouts to take stock to St. Joseph; that these plaintiffs had before that time shipped sheep from Stouts on that train to St. Joseph. Under these and other circumstances disclosed by the evidence in the abstract, it would seem that the jury might have found that, if the commissionman was to notify the defendant when to take the stock to St. Joseph, such an arrangement had no reference to the hour of shipment, as to whether it should be in the daytime or nighttime, it being understood by both parties that they were to be so shipped as to arrive for the morning market. If, however, it should be thought better to make the shipment for the Tuesday morning or Wednesday morning market, the commissionman might instruct the defendant to hold the shipment accordingly. Whether the fault of making the shipment at this time was upon the defendant company, or upon the plaintiffs themselves or their commission agent, is a difficult question to determine from the evidence shown by the abstract, and it is not so certain that defendant was free from negligence in the matter as to justify the court in setting aside the verdict of the jury and the judgment of the lower court.

This being the only question presented, the judgment of the district court is

AFFIRMED.